UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHARIS ROCK                                                                          PLAINTIFF

V.                              NO. 3:18-CV-172-BD

ANDREW SAUL, Commissioner
Social Security Administration[1]                                                    DEFENDANT

# ORDER

## I. Introduction:

On July 23, 2015, Charis Rock applied for disability benefits, alleging disability beginning on March 3, 2015. (Tr. at 10) Ms. Rock's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge (ALJ) denied the application. (Tr. at 32) Ms. Rock requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the Commissioner's final decision. Ms. Rock filed this case seeking judicial review of the decision denying her benefits.[2]

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge. (Docket entry #3)

1

## II. The Commissioner's Decision:

The ALJ found that Ms. Rock had not engaged in substantial gainful activity since the alleged onset date of her disability, March 3, 2015. (Tr. at 12) At step two of the five-step analysis, the ALJ found that Ms. Rock had the following severe impairments: degenerative disc disease, fibromyalgia, asthma, migraine headaches, type II diabetes, bradyarrhythmia s/p pacemaker, obesity, depression, and anxiety disorder. *Id.*

After finding that Ms. Rock's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Ms. Rock had the residual functional capacity (RFC) to perform work at the sedentary level with limitations. (Tr. at 16) She could occasionally stoop, crouch, bend, kneel, crawl, and balance. *Id*. She could not be exposed to excessive amounts of dust, smoke, fumes, and other pulmonary irritants. *Id*. Her work must be unskilled, with simple, routine, and repetitive tasks, and with supervision that is simple, direct, and concrete. *Id*. Ms. Rock would have to be able to use a cane. *Id.*

The ALJ found, based on Ms. Rock's RFC, that she was unable to perform any past relevant work (Tr. at 30) At step five, the ALJ relied on the testimony of a Vocational Expert (VE) to find, based on Ms. Rock's age, education, work experience and RFC, that she was capable of performing work in the national economy as assembler and inspector. (Tr. at 31) Thus, the ALJ determined that Ms. Rock was not disabled. *Id.*

## III. Discussion:

    A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

    B.   Ms. Rock's Arguments on Appeal

Ms. Rock maintains that the ALJ's decision to deny benefits is not supported by substantial evidence. She argues that the ALJ did not give proper weight to the opinion of her treating rheumatologist and that the ALJ did not consider her impairments in combination.

Objective tests revealed that Ms. Rock suffered from generally mild conditions; that her impairments were controlled by treatment; that she experienced improvement in her conditions over time; and that she was able to perform activities of daily living. Her primary argument relates to fibromyalgia. She complained of related sleep problems, joint pain, knee pain, rheumatoid arthritis, malaise, headaches, and frequent falls. Ms.

Rock had an "excellent response" to a CPAP machine (Tr. at 599-600), and her joint inflammation was controlled by Plaquenil. (Tr. at 19, 1256-1257) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

In August 2015, Ms. Rock had been diagnosed with rheumatoid arthritis, but had not yet seen a rheumatologist. (Tr. at 1066) X-rays of her hands and wrists did not show inflammatory arthritis. (Tr. at 1254-1257) X-rays of her knees showed mild conditions. (Tr. at 1253) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). MRI of the cervical spine showed mild degeneration and her doctor did not recommend back surgery. (Tr. at 51-52, 1701-1702) Neurological examinations were grossly normal, as were musculoskeletal exams, except for some trigger point tenderness. (Tr. at 1252-1257, 2472-2492) Imitrex helped with migraines. (Tr at 73) A pacemaker and cane helped Ms. Rock avoid falls. (Tr. at 68) No doctor placed any permanent restrictions on her. (Tr. at 69) Her rheumatologist, Dr. Beata Majewski, M.D., said that she should return to work. (Tr. at 29, 1262)

Ms. Rock treated her pain conservatively, preferring not to take narcotics. (Tr. at 55) The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). She took Tylenol 4 as prescribed by her pain management specialist, which helped with pain. (Tr. at 54) At the hearing,

4

she said she could do water aerobics, yoga, and go to the chiropractor. (Tr. a 54-55) The ability to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Dr. Majewski encouraged this sort of conservative care. (Tr. at 2472) Ms. Rock also said that she homeschooled her children, drove them on day trips, performed housework, prepared meals, and shopped in stores. (Tr. at 56-63, 69-70, 345-347) Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

Ms. Rock suggests that the ALJ should have given more weight to Dr. Majewski's opinion. Dr. Majewski treated Ms. Rock in 2016 and 2017 for symptoms of fibromyalgia, and she gave an opinion limiting Ms. Rock to less than sedentary work. (Tr. at 2905-2906) But Dr. Majewski found no swelling in any peripheral joints and no sign of inflammatory disease. (Tr. at 1256-1257, 2472) Dr. Majewski recommended that Ms. Rock (who was morbidly obese) diet and exercise. (Tr. at 18, 2472) She continued conservative medication management. (Tr. at 1256-1257) She also recommended that Ms. Rock return to work. (Tr. at 1262) Dr. Majewski did not place restrictions on Ms. Rock in spite of limiting her to less than sedentary work.

It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). And, "physician opinions that are internally inconsistent are entitled to less deference than they

would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

The ALJ pointed out the inconsistencies between Dr. Majewski's opinion and her own notes (including the recommendation that Ms. Rock return to work). The ALJ further observed that Dr. Majewski had relied heavily on Ms. Rock's subjective complaints that were not borne out by the medical record. (Tr. at 29) Moreover, Dr. Majewski's opinion was submitted on a short, check-the-box form with no reference to objective evidence. This renders the opinion less persuasive. "A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

Ms. Rock also characterizes her depression and anxiety as disabling, but she showed some progress over the relevant time-period, exhibiting a pleasant mood at her appointments. (Tr. at 2658-2664, 2704-2705) Medication and natural remedies were helping. (Tr. at 3036-3041) Because Ms. Rock could perform a variety of activities in her daily life, mental impairments do not appear to significantly restrict her.

The ALJ thoroughly discussed all of Ms. Rock's impairments in combination. He cited to mild conditions, improvement over time with treatment, and a lack of functional restrictions. He weighed Dr. Majewski's opinion against the opinions of the state-agency reviewing physical and psychological experts (whose opinions mirrored the RFC), and properly found that Ms. Rock was not disabled. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th

6

Cir. 1994)(the ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly weighed the opinion evidence and properly considered Ms. Rock's impairments in combination. The finding that Ms. Rock was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, AFFIRMED. The case is dismissed, with prejudice.

IT IS SO ORDERED this 28th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE